UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH DEFFAA,

                          Plaintiff,

—*against*—

PIVOTEL AMERICA INC., and
PIVOTEL GROUP PTY LIMITED,

                         Defendants.

20 Civ. 5466

## COMPLAINT

Plaintiff Deborah Deffaa hereby alleges as follows:

### INTRODUCTION

1. Plaintiff Deborah Deffaa brings this breach of contract case because the defendants (collectively "Pivotel") have wrongfully refused make an "earnout" payment of up to $2 million the she is rightfully owed in connection with Pivotel's purchase of Ms. Deffaa's satellite communications business. Making matters worse, Pivotel has declared Ms. Deffaa is due nothing, while refusing to provide, as the contract requires, *any* of the material necessary to calculate the what is due—namely, monthly financial statements from July 2019 through June 2020, and an "Earnout Calculation Statement" for that one-year period calculated in accordance with generally accepted accounting principles ("GAAP").

2. Pivotel has justified its claim that Ms. Deffaa is due nothing by relying on a contract clause stating that no earnout would be payable if the 2019 revenue of sold business was below $9,848,000. But Pivotel's reliance on that clause is based on wrongfully omitting two revenue streams, in flagrant violation of the contract.

3. The first revenue stream is from certain contracts acquired after the transaction with Ms. Deffaa. Pivotel apparently believes this revenue is carved out from the earnout

payment. Not so. The earnout is based on a proportion of "the aggregate gross revenue of the Companies," without any exception for new customers or contracts. The point here was simple: to the extent the business succeeded in the year following the transaction, Ms. Deffaa was to share in that success. This was a key aspect of the purchase price, and it should be paid.

4. The second revenue stream is from a contract with the purchasing agency of the Colombian Air Force. Pivotel had the contract assigned to third party supplier, breaking with past practice, so that only the net margin would be recorded as revenue. This reduction in revenue gave Pivotel an excuse to declare Ms. Deffaa was not due an Earnout Payment. But the parties included a provision in their contract designed precisely to address this sort of gamesmanship. It required Pivotel to "operate the business of the Companies in good faith, consistent with the past practices of the Companies, and not to take any action intended to inhibit or otherwise adversely affect in any manner the opportunity of [Ms. Deffaa] to earn the maximum Earnout Payment . . . ." Pivotel's gambit with the Colombian Air Force contract was designed in bad faith to shortchange Ms. Deffaa, in violation of this provision.

5. By this lawsuit, Ms. Deffaa seeks to hold Pivotel responsible for failing to honor its obligations, and to be made whole for her losses.

## THE PARTIES

6. Deborah Deffaa is a Nevada resident.

7. Pivotel America Inc. ("Pivotel America") is a Delaware corporation, with a principal place of business in Louisville, Tennessee.

8. Pivotel Group Pty Limited is a public limited liability company, incorporated under the laws of Australia ("Pivotel Australia") and with its principal place of business in Queensland, Australia.

**JURISDICTION AND VENUE**

9.  This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a)(3) because this is a suit between citizens of different States and in which citizens or subjects of a foreign state are additional parties, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over the defendants, and venue is proper in this judicial district, because the parties agreed in § 10.03 of the Share Purchase Agreement to submit exclusively to the jurisdiction and venue of courts in New York for any action "arising out of or relating to" the Share Purchase Agreement, and to unconditionally waive any objections to the Court's jurisdiction or to venue for any action brought in the New York courts.[1]

**FACTS**

**Pivotel's Acquisition of MVS USA and Affiliates**

11. Prior to July 1, 2019, Ms. Deffaa owned 100% of the stock of MVS USA, Inc. ("MVS USA"), DebCom Incorporated and JMaxIT, Inc. and their respective subsidiaries. These

---

[1] The Share Purchase Agreement contemplates that an "Independent Accounting Firm" would resolve certain, limited calculation disputes following Pivotel providing an "Earnout Calculation Statement": "In the event [Pivotel] and [Ms. Deffaa] are unable to resolve any dispute regarding the Earnout Calculation Statement within fifteen (15) days following [Pivotel's] receipt of an Earnout Dispute Notice, such dispute shall be submitted to the Independent Accounting Firm for resolution." This is not a dispute about the Earnout Calculation Statement—which has not even been provided—but about a breach of contract. The dispute has everything to do with legal issues for a court (such as what material Pivotel was required to provide when, and whether Pivotel had a right to assign a contract in a scheme to shortchange Ms. Deffaa), not accounting issues. Hence, what governs is the forum selection clause providing for the New York courts to resolve disputes "arising out of or relating to" the Share Purchase Agreement. *See*, *e.g.*, *XL Capital, Ltd. v. Kronenberg*, 04 Civ. 5496, 2004 WL 2101952, at *2 (S.D.N.Y. Sept. 20, 2004) (concluding that similar contract language "did not contemplate that non-accounting issues such as fraud and breach of contract would be submitted to an accounting firm," even if those issues would "have an impact on the amount of the Earned Payout Amount"), *aff'd*, 145 F. App'x 384 (2d Cir. 2005) (affirming and noting that the "gravamen of the claims is that" defendants took actions that would "necessarily lead to a lower earnout payment," as contrasted with a dispute about "pure accounting issues").

companies have since 1993 provided satellite telecommunications services and equipment on a world-wide basis. This included, for example, selling satellite equipment and data plans to shipping vessels that need broadband connectivity as they traverse the ocean.

12. On July 1, 2019, Ms. Deffaa, Pivotel America and Pivotel Australia entered into a Stock Purchase Agreement, with Ms. Deffaa selling her 100% interest in MVS USA, DebCom Incorporated and JMaxIT, Inc. (collectively, the "Transferred Companies"). Also, on July 1, 2019, Ms. Deffaa and Pivotel International Pty Limited entered into a separate agreement for the acquisition of MVS Trading House Netherlands B.V. ("MVS Netherlands").

13. The purchase price for the Transferred Companies was (a) $4,979,833.70, (b) plus or minus a working capital adjustment, (c) plus an "Earnout Payment" of up to $2 million.

14. The Earnout Payment would be calculated based the proportion of gross revenue that was earned by the Transferred Companies and MVS Netherlands in the year following transaction, compared to a certain benchmark revenue projection. If the actual revenue matched the benchmark, the full $2 million would be due; if gross revenue was below the benchmark, the Earnout Payment would be proportionately less. In all events, no Earnout Payment would be made if the companies' 2019 calendar revenue did not exceed a specified minimum ($9,848,000).

15. The parties included a provision in the Share Purchase Agreement, commonly associated with earnouts, prohibiting Pivotel from trying to game the Earnout Payment to Ms. Deffaa's disadvantage. Specifically, Pivotel agreed it would "operate the business of the Companies in good faith, consistent with the past practices of the Companies, and not to take any action intended to inhibit or otherwise adversely affect in any manner the opportunity of Seller to earn the maximum Earnout Payment . . . ."

**MVS USA's Acquisition of MVS Communications' Customers**

16. MVS Communications Ltd. ("MVS Communications") was a Cypriot company that shared the trade name "MVS," and cooperated commercially, with MVS USA. However, MVS Communications but did not have any common ownership or control with MVS USA.

17. Effective September 1, 2019, MVS Netherlands acquired certain customer contracts of MVS Communications.

18. Ms. Deffaa was instrumental in facilitating the acquisition. She introduced the parties to each other and negotiated the terms that became finalized in the acquisition of the MVS Communication customer contracts by MVS Netherlands.

**Pivotel's Manipulation of the ACOFA Contract**

19. Since 2017, MVS USA has sold telecommunications and information technology equipment and services to Agencia de Compras de la Fuerza Aérea (the Columbian Air Force purchasing agency or "ACOFA"). These contracts were awarded through a bidding process. MVS USA served as the prime contractor for sales to ACOFA, retaining subcontractors as needed.

20. In 2019, MVS USA again submitted a bid to ACOFA for Information technology equipment and integration services. Again, MVS USA was selected as the contract winner by ACOFA in September 2019.

21. Although it had won the prime contract, MVS USA assigned the ACOFA contract to a supplier, Nexsys International LC. As a result, MVS USA recorded only the net margin of $185,859 as revenue, instead of the full gross revenue under the ACOFA contract of $1,096,550.83. Prior to the acquisition by Pivotel, MVS USA had never assigned the ACOFA contracts, and always acted as the prime contractor with respect to ACOFA contracts. The assignment was a deliberate scheme to shortchange Ms. Deffaa.

**Financial Reporting**

22. The Stock Purchase Agreement required Pivotel to provide Ms. Deffaa with an unaudited statement of its calculation of the revenue within 15 days following the end of each month during the twelve-month earnout period.

23. Pivotel was also required to provide an Earnout Calculation Statement by July 15, 2020, setting out an income statement for each Transferred Company for the prior twelve months, prepared in accordance with GAAP, and a calculation of the Earnout Payment due Ms. Deffaa.

24. Pivotel failed to comply with its contractual reporting requirement for each month from July 2019 through June 2020, and failed again to provide the Earnout Calculation Statement by July 15, 2020.

25. While continuing to breach the requirement to provide statements within 15 days of the end of each month, Pivotel did provide a draft "revenue analysis and financial results for MVS for the 12 month period ending December 31, 2019" to Ms. Deffaa on February 20, 2020. A final unaudited revenue statement for the year ending December 31, 2019 was provided by Pivotel's counsel on April 13, 2019.

26. The final revenue statement for the period ending December 31, 2019 did not include the revenues from MVS Communications customers acquired by MVS Netherlands, and did not include the AFCOA prime contract revenues.

27. In subsequent correspondence Pivotel has explained that it does not believe these two revenue streams should be included in its gross revenue, despite the clear language in the Share Purchase Agreement to the contrary. Based on this misreading of the contract, Pivotel has wrongfully seized upon the clause providing for no Earnout Payment in the event 2019 revenue

is below $9,848,000, and has refused to make any Earnout Payment—which is yet another contract breach.

**Notice of Breach**

28.     On March 17, 2020, Ms. Deffaa, through counsel, provided Pivotel a "Notice of Breach," contending that Pivotel had breached the Share Purchase Agreement by failing to provide monthly revenue data, as required. Ms. Deffaa also provided notice that Pivotel's draft and tardy statement for the period ending December 31, 2019, provided on February 20, 2020, breached the Share Purchase Agreement in two respects described above. First, Pivotel did not include MVS Netherlands revenues from new customers acquired from MVS Communications. Second, Pivotel booked only the net margin and not the prime contract revenues from the ACOFA contract.

29.     Pivotel responded to the Notice of Breach on April 13, 2020. Pivotel finally provided a final revenue statement for the period ending December 31, 2020 (but no other periods). Pivotel "categorically denie[d] that it has materially breached the Stock Purchase Agreement." Pivotel further stated that "there will be no Earnout Payment to Seller and no need for Pivotel to provide further revenue statements to Seller."

30.     Ms. Deffaa responded to Pivotel's letter on April 29, 2020. Her response noted the disputes between the parties on the MVS Communications and ACOFA issues. Ms. Deffaa insisted that "[u]ntil this issue has been resolved, Pivotel should fulfill its contractual obligation to provide MVS USA financial statements monthly on a timely basis."

31.     Pivotel replied on May 27, 2020, concluding that "Ms. Deffaa has no right to an Earnout Payment."

32.     Pivotel did not provide any statements of revenue for any period after December 31, 2020.  Pivotel also failed to provide the Earnout Calculation Statement by July 15, 2020.

33. If Pivotel had honored its contractual obligations, Ms. Deffaa would have received financial statements for each month during the earnout period (to date she has none), and those statements would reflect the revenue from the MVS Communications contracts from the ACOFA contract that should not have been excluded in bad faith. The upshot would be a substantial Earnout Payment to her, but instead, because of Pivotel's breaches, Ms. Deffaa has received nothing, and has been forced to file this lawsuit.

34. Ms. Deffaa seeks to recover here her full Earnout Payment, plus attorneys' fees and other expenses for having to sue to recover what she is due. Under the Share Purchase Agreement, Pivotel is responsible for any "Losses" that flow from the "failure by [Pivotel] to perform any of its covenants or agreements contained in" the Share Purchase Agreement, and the term Losses is defined to included "reasonable attorneys' fees and expenses."

### FIRST CAUSE OF ACTION—BREACH OF CONTRACT

35. Ms. Deffaa repeats the allegations above.

36. Based on the actions above, Pivotel has breached and repudiated the Share Purchase Agreement in numerous ways, including by:

   (a) failing to provide monthly financials;

   (b) failing to provide an Earnout Calculation Statement that could be used to calculate the Earnout Payment;

   (c) wrongfully asserting that Pivotel would not include revenue from the MVS Netherlands customers acquired from MVS Communications in any Earnout Payment;

   (d) wrongfully assigning the ACOFA contract to manipulate revenue in its favor and to the detriment of Ms. Deffaa's Earnout Payment;

   (e) wrongfully asserting that that calendar 2019 revenue was below the threshold for an Earnout Payment;

  (f)  stating in its correspondence unequivocally that it would provide no further financial data and would make no Earnout Payment (hence repudiating its obligations under the Share Purchase Agreement); and

  (g)  failing to pay the proper Earnout Payment due to Ms. Deffaa.

37. Ms. Deffaa has been damaged by these breaches, in an amount to be proven at trial, but believed to be well in excess of the $75,000 jurisdictional minimum.

### SECOND CAUSE OF ACTION—DECLARATORY JUDGMENT

38. Ms. Deffaa repeats the allegations above.

39. There is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40. Ms. Deffaa seeks a judicial declaration that any Earnout Calculation must include revenue from the MVS Communications' contracts and the ACOFA contract, along with any other matters property falling within the definition of "Revenue" under the Share Purchase Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Deborah Deffaa hereby demands

41. damages against Pivotel in an amount to be determined at trial, and inclusive of attorneys' fees and costs;

42. a judicial declaration in her favor, as set forth above; and

43. such other relief as the Court deems just and proper.

Dated:  New York, New York
        July 16, 2020

Alfred M. Mamlet*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-3000
amamlet@steptoe.com
*pro hac vice application forthcoming

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: */s/ Charles Michael*
    Charles Michael
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 506-3900
    cmichael@steptoe.com

*Counsel for Plaintiff Deborah Deffaa*