UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH DEFFAA,

                           Plaintiff,

– against –

PIVOTEL AMERICA, INC., and PIVOTEL
GROUP PTY LIMITED,

                           Defendants.

**ORDER**

20 Civ. 5466 (ER)

Ramos, D.J.:

      Before the Court is Pivotel's letter motion for leave to move for a protective order regarding the designation of certain documents as "Highly Confidential." The Court assumes familiarity with the background of this dispute. For the reasons set forth below and stated on the record at the parties' September 9, 2021 conference on this matter, Pivotel's motion is deemed made and DENIED, subject to Deffaa's compromise position that Pivotel may redact "specific pricing information" contained in "Communications and other documents dating from on or after July 1, 2020. . . reflecting the rates charged by or to the Transferred Companies or negotiations regarding amounts charged to or by the Transferred Companies." Doc. 61 at 6; Doc. 58 at 2.

      The protective order in this case provides that documents may be designated as "Highly Confidential" or "Attorney's Eyes Only ("AEO")" only if they "would create a substantial risk of serious financial, competitive or other injury that cannot be avoided by less restrictive means." Doc 31 at ¶ 1.e. The protective order provides that once a confidentiality designation is challenged, the burden is on the party seeking the "Highly Confidential" designation to move for a protective order to maintain it. To establish that it is entitled to a protective order, Pivotel must

demonstrate that "[1] the information sought is a trade secret or other confidential information, and [2] that the harm caused by its disclosure outweighs the need of the party seeking the disclosure." *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006).  As Deffaa notes, is Pivotel's burden to justify the confidentiality of each document for which AEO designation is sought.  Doc. 61 at 2 (citing *Schiller v. City of New York*, 04 Civ. 7922, 2007 WL 136149, at *4 (S.D.N.Y. Jan 19, 2007)).

While the parties apparently agree that this information has properly been designated as confidential, Pivotel has not met its burden to show that the categories of information it seeks should be subject to the heightened "Highly Confidential" designation, for several reasons.

*First*, Pivotel has failed to meet its burden to show that Highly Confidential treatment is merited for each and every document.  *See Schiller*, 2007 WL 136149, at *4.  While Pivotel has apparently trimmed down its list of documents from over 14,000 to approximately 2,100, it has still not described with specificity why all 2,100 of these documents merit such highly protective treatment.  While the Court previously permitted Pivotel to describe these documents by category, rather than describe each document individually, the Court still must have a basis on which to conclude that these categories in fact cover highly sensitive material.  Here, however, the categories described by Pivotel remain quite vague and could encompass a broad scope of documents.

*Second*, the two categories of documents identified by Pivotel are too broad and general for the Court to conclude that their disclosure to Deffaa would cause "a substantial risk of serious financial, competitive or other injury that cannot be avoided by less restrictive means," *see* Doc 31 at ¶ 1.e., particularly given Deffaa's proposed compromise to redact pricing figures on certain documents post-dating July 1, 2020.  Regarding the first category of documents, Pivotel has

only identified the common threads of "client lists" and "documents of a financial nature." *See* Doc. 58 at 2.  This is insufficient to demonstrate exactly why these documents should be so highly protected.  *See, e.g.*, *Broadspring, Inc. v. Congoo, LLC*, No. 13 Civ. 1866 (JMF), 2014 WL 4100615, at *21 (S.D.N.Y. Aug. 20, 2014) (noting that conclusory assertions that disputed documents dealt with topics such as "client acquisition strategy" and "client retention strategy" were insufficient to merit AEO status).  Moreover, while Pivotel's second proposed category—documents reflecting amounts charged by the transferred companies after July 1, 2020—is more specific, Pivotel provides no reason why its concerns about any harm from the disclosure of highly sensitive information were not addressed by Plaintiff's suggestion that the actual price terms be redacted from these documents.  *See Broadspring*, 2014 WL 4100615, at *20 (noting that even if a single line is properly redacted as AEO, this would not justify withholding an entire document).

*Third*, and more fundamentally, Pivotel's motion is predicated on the assumption that Deffaa will violate the existing protective order in this case, as well as perjure herself, as she has asserted in a sworn declaration that she will abide by the protective order.  *See* Doc. 47-2 at ¶ 15.  While the Court recognizes that Pivotel has accused Deffaa of dishonest behavior in the past, this conduct is disputed, and the Court also recognizes Deffaa's argument that she has been retired for two years and has no interest in using this information against Pivotel.  On balance, the Court finds that, given that Deffaa has been warned about the importance of abiding by the protective order, Pivotel has not met its burden of showing a substantial risk of harm that would result from disclosure to her.  As counsel for Deffaa notes in its letter, the parties have identified no case in which AEO designation was upheld simply due to one party's mistrust of another.  Doc. 61 at 5.

*Finally*, Deffaa has demonstrated a compelling need for these documents. Her core claim in this case hinges on how much revenue Pivotel generated in the year following the stock purchase agreement ("SPA") in this case, and whether this revenue was calculated in a manner consistent with the parties' understanding and the transferred companies' past practices. Pivotel has essentially argued that any documents reflecting how such revenue was generated and calculated cannot be shared with Deffaa herself. Because Deffaa owned the transferred companies for decades before the SPA was executed in 2019, the Court recognizes that she is likely in the best position to help counsel understand many of these documents, particularly given that she is proceeding as an individual—as opposed to through a corporate entity that may have other individuals with comparable expertise to review the documents.

Accordingly, Defendants' motion for a protective order is denied, except to the extent that Defendants may redact "specific pricing information" reflected in the second category of documents, "Communications and other documents dating from on or after July 1, 2020 . . . reflecting the rates charged by or to the Transferred Companies or negotiations regarding amounts charged to or by the Transferred Companies." The Clerk of Court is respectfully directed to terminate the motion, Doc. 58.

It is SO ORDERED.

Dated:  September 9, 2021
        New York, New York

_____
EDGARDO RAMOS, U.S.D.J.